IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
VIRGINIA
**Newport News Division**

| | |
|---|---|
| THOMAS WAYNE BIRDSONG, | |
| Plaintiff, | |
| v. | Civil Action No. 4:20-cv-00149 |
| W.M. JORDAN, CO. | |
| Serve: | |
| Registered Agent<br>John Lawson<br>11010 Jefferson Avenue<br>Newport News, Virginia 23601 | **COMPLAINT** - Age Discrimination in Employment Act Discrimination |
| Defendant. | **Jury Trial Demanded** |

## COMPLAINT

Comes now the Plaintiff, THOMAS WAYNE BIRDSONG (hereinafter "Plaintiff" or "Mr. Birdsong"), and files this Complaint against Defendant, W.M. JORDAN COMPANY. (hereinafter "Defendant" or "W.M. Jordan"), and moves this Court for entry of judgement in her favor against the Defendant, as set forth herein:

## NATURE OF THE ACTION

1. Plaintiff brings this action for damages and injunctive relief pursuant to the Defendant's violations of the Age Discrimination in Employment Act 29 U.S.C. §§ 621, *et seq.*, and to redress Defendant's deliberate and willfull unlawful employment discrimination against Plaintiff in violation of his federal rights.

1

2. This action against Defendant W.M. Jordan arises from Defendant's unlawful discrimination against and forced discharge of Mr. Birdsong on account of his age.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, the Eastern District of Virginia has proper subject matter jurisdiction over this matter as it is a question of federal law.

4. Specifically, this matter concerns the violation and interpretation of the Age Discrimination in Employment Act 29 U.S.C. §§ 621, *et seq.*,

5. The Eastern District of Virginia, Newport News Division is the proper venue for this action pursuant to 28 U.S.C. § 1391(c)(2) and 28 U.S.C. § 1391(b)(1),(2) as it is the District and Division in which Defendant is incorporated and has a primary place of business at 11010 Jefferson Avenue, Newport News, Virginia 23601; and is the location at which the discriminatory practices were perpetrated, where the Plaintiff was employed by Defendant, and is convienent to the parties and witnesses.

## PARTIES TO THIS ACTION

6. Plaintiff, Thomas Wayne Birdsong, is an American citizen in the United States and a resident of Franklin, Virginia.

7. At all times relevant to the allegations in this Complaint, Mr. Birdsong was an employee of Defendant.

8. At all times relevant to the allegations in this Complaint, Mr. Birdsong was employed at the Defendant's Principal Office in Newport News, Virginia.

9. Defendant, W.M. Jordan Company is a corporation existing under and by virtue of the laws of the State of Virginia, organized in Virginia, with its principal place of business in Newport News, Virginia.

10. Defendant employs approximately three hundred (300) employees and is an employer as defined by the Age Discrimination in Employment Act ("ADEA"); 29 U.S.C. § 630(b).

## PROCEDURAL REQUIREMENTS

11. On July 23, 2020, Plaintiff filed a charge of age discrimination in violation of the ADEA with the Equal Employment Opportunity Commission ("EEOC"). Such charge was filed within one hundred eighty (180) days after the alleged unlawful employment practices in violation of 29 U.S.C. §§ 621, *et seq.*, occurred.

12. The Complaint in this matter was filed with this Court after sixty (60) days having passed since Plaintiff filed a charge of Age Discrimination against Defendant with the EEOC.

13. Prior to the filing of this Complaint the EEOC has not instigated an action upon Plaintiff's charge or made an attempt to institute an action to enforce the provisions of 29 U.S.C. §§ 621, *et seq*.

14. Mr. Birdsong has complied with the Age Discrimination in Employment Act administrative requirements of 29 U.S.C. § 626 and, having met his procedural and administrative deadlines, has elected to bring the action privately.

15. Mr. Birdsong has exhausted all available administrative remedies prior to bringing this suit.

## FACTUAL ALLEGATIONS

16. Mr. Birdsong was employed at W.M. Jordan from June 1990 until he was forced to retire on April 30, 2020.

17. Mr. Birdsong began working at W.M. Jordan as an assistant superintendent in 1990.

18. Mr. Birdsong was a dedicated and effective employee during his entire employment.

19. Mr. Birdsong was promoted from assistant superintendent to project superintendent within three years of working at W.M. Jordan.

20. Mr. Birdsong served as a project superintendent at W.M. Jordan for the rest of his time there until he was forced to retire.

### *Plaintiff is a Member of a Protected Class and Significantly Older than Similarly Situated Employees*

21. At the time he was forced to retire, Mr. Birdsong was one of approximately thirty project superintendents working out of the Newport News Office.

22. Mr. Birdsong is a member of a protected class over the age of forty, Mr. Birdsong is seventy-three (73) years old.

23. Mr. Birdsong is believed to be the eldest employee working within any of W.M. Jordan's offices.

24. Mr. Birdsong is at least ten years older than the next oldest project superintendent and was on average over twenty years older than similarly situated project superintendents.

### *Plaintiff was Meeting Defendant's Standards of Performance and Served as a Mentor to Younger Superintendents*

25. Mr. Birdsong worked diligently on all the projects to which he was assigned and work was coming in regularly.

26. Mr. Birdsong at times, when whether conditions were hazardous, would drive over an hour to his office and be the only one who came to work, despite the conditions and his age.

27. Mr. Birdsong experienced no reduction in work or schedule in 2020 and anticipated no reduction in work for the foreseeable future.

28. Mr. Birdsong expressed a desire to remain at W.M. Jordan for years to the General Superintendent John Newman ("Mr. Newman").

29. Mr. Newman informed Mr. Birdsong in 2019 that Mr. Birdsong "could have a job as long as he wanted one."

30. Through 2019 and 2020 Mr. Birdsong worked on three separate multimillion dollar projects.

31. Mr. Birdsong was still working on a multimillion dollar project in Norfolk when Defendant discriminated against him on account of his age.

32. The project on which Mr. Birdsong was working was not near completion when he was forced to retire, to the present this project still has not been completed.

33. W.M. Jordan has continued to bring on interns to help with, advertise the construction of, and present the success of the project on which Mr. Birdsong was working when he was forced to retire.

34. Mr. Birdsong was a dedicated and respected member of his crew, superiors, coworkers, and subordinates recognized his knowledge and skill. **(See Exhibit A).**

35. Mr. Birdsong, while at W.M. Jordan, on his own accord, helped to guide and direct the younger employees toward being successful—and for W.M. Jordan, profitable—employees. **(See Exhibit A)**.

36. Mr. Chuck Arthur ("Mr. Arthur"), Mr. Birdsong's immediate supervisor, informed Mr. Birdsong, in the month before he was forced to resign, that Mr. Birdsong was doing a fantastic job and that he, Mr. Arthur, had no complaints with his performance.

37. Mr. Birdsong was good at his job, exceeded expectations, thrived interpersonally, and helped to guide and advance younger employees.

*Defendant Forces Plaintiff to Retire on Account of His Age as Part of A Discriminatory Scheme to Remove Older Employees*

38. On April 27, 2020, Mr. Birdsong was approached by the Vice President/Head General Superintendent, Mr. Howard Joyner ("Mr. Joyner").

39. Mr. Joyner informed Mr. Birdsong that on April 30, 2020 Mr. Birdsong would either resign or be terminated.

40. Mr. Birdsong was not given an option to remain with W.M. Jordan.

41. Mr. Birdsong, during this conversation, indicated to Mr. Joyner that he had no intention of retiring at that time.

42. Mr. Birdsong did not want to have a termination on his record and therefore took the only option open to him by accepting his resignation.

43. Mr. Birdsong's resignation, when coerced with the threat of termination, was not voluntary.

44. Mr. Birdsong was constructively discharged through the ultimatum presented to him by Mr. Joyner on behalf of W.M. Jordan.

45. Mr. Birdsong's resignation was forced upon him on account of his age.

46. Defendant did not constructively discharge Mr. Birdsong because he was performing poorly, they did not constructively discharge him due to financial or business constraints, they did not constructively discharge him because he did not have the work, and they did not constructively discharge him because of personal issues.

47. Mr. Birdsong spoke to Chuck Arthur ("Mr. Arthur") the lead superintendent on his project after he was given the discriminatory ultimatum by Defendant.

48. Mr. Arthur expressed surprise that Mr. Birdsong was being forced out.

49. Mr. Arthur, Mr. Birdsong's direct supervisor, was shocked and did not know that Mr. Birdsong was going to be forced out

50. After Mr. Birdsong's forced resignation, Mr. Arthur placed Mr. Birdsong's hardhat, vest, and nameplate on a shelf above the copier on the job site, Mr. Arthur told Mr. Birdsong that he put it there "for when you come back," further confirming that his termination was not for cause. **(See Exhibit B).**

51. Mr. Arthur's presentation for Mr. Birdsong would not be created for an employee fired for cause. Mr. Arthur's respect for Mr. Birdsong, and his desire for Mr. Birdsong's return, demonstrate the efficacy and diligence Mr. Birdsong exhibited at W.M. Jordan.

52. Mr. Birdsong was offered a severance payment upon his retirement, which further demonstrates that he was being forced to resign not for cause.

53. Mr. Arthur informed Mr. Birdsong that between the ultimatum on April 27 and his date of termination on April 30, he could "do whatever he wanted."

54. Mr. Birdsong elected to continue to work on those days, despite his confusion, shock, and the discriminatory ultimatum forced upon him.

55. On April 30, 2020, Mr. Birdsong went to the primary office in Newport News to return his computer, phone, and truck.

56. While in the offices, Mr. Birdsong went to speak with Kathy Horning ("Ms. Horning") a Human Resources officer at the Newport News offices.

57. As he was leaving Ms. Horning, he saw that she scratched his name off of a list.

58. Included on this list were a number of other older employees at W.M. Jordan.

59. Mr. Birdsong's name on this list of older employees confirms that he was another casualty of Defendant's deliberate scheme to rid itself of its older employees.

60. Defendant sent out an email shortly thereafter congratulating Mr. Birdsong and three other older employees, Sunny Wilfork, Sam Ward, and Mike Carter, on their retirements, all of which were involuntary.

61. The three other employees mentioned were on the list of employees whose names were being scratched out by Ms. Horning.

62. Defendant was attempting to cover up their forced retirements of the older members of the workforce with this congratulatory email.

63. Mr. Birdsong replied to this company wide email stating that he was not retiring but was being forced out by Defendant.

64. Mr. Birdsong could not let the lies stated by Defendant stand, his response went to bely the falsehoods stated by Defendant and to warn the other older employees at W.M. Jordan that they were at risk.

65. Defendant would go on to remove more of their older workforce after Mr. Birdsong was forced out, continuing their scheme of making their workforce younger.

66. None of these removals were necessary or for legitimate business purposes.

67. Despite his dedication, work ethic, and abilities, Mr. Birdsong was repaid by Defendant with wrongful discharge on account of his age.

68. Defendant forced Mr. Birdsong to retire because he was the oldest Project Superintendent.

69. Defendant forced Mr. Birdsong, and other older employees, from the ranks simply because they were older than their coworkers.

***Defendant Treats Younger Project Superintendents More Favorably and Hires Younger Employees Prior to Terminating Plaintiff***

70. Defendant treated younger, less experienced, project superintendents, who were similarly situated to Mr. Birdsong, more favorably.

71. Mr. Birdsong was the eldest project superintendent in the Newport News office when he was forced out through threats of termination.

72. There were younger employees who were brought on prior to Mr. Birdsong's forced resignation who were at least thirty years younger than Mr. Birdsong.

73. In fact, Defendant had begun to hire other project and assistant superintendents directly out of college.

74. Mr. Birdsong was subjected to adverse employment actions, specifically his forced resignation, on account of his age—actions which were not taken against younger project superintendents.

75. Defendant engaged in this discriminatory behavior willfully in direct violation of Mr. Birdsong's federal rights as part of a systemic attempt to clear out older members of their workforce.

### *Plaintiff Suffers Monetary Loss as a Result of Defendant's Discrimination*

76. Mr. Birdsong has been unable to find work since he was forced out of W.M. Jordan.

77. Mr. Birdsong has lost the opportunity to continue working at the position and salary to which he dedicated over twenty years.

78. Mr. Birdsong obtained his position through decades of work at W.M. Jordan, his position and salary will be impossible to obtain in a brief timespan.

79. Mr. Birdsong has lost all income between his discriminatory discharge and the present, and will continue to lose income into the future.

80. Mr. Birdsong was due a raise prior to his termination which he was denied through the discrimination of W.M. Jordan.

81. Mr. Birdsong has suffered and will suffer in the future a continuing dimunation of wages as a result of Defendant's discrimination.

82. Mr. Birdsong may never regain the same income level he had prior to Defendant's discrimination.

83. With Mr. Birdsong and other's forced resignations and terminations, Defendant was trying and largely succeeded in systematically and deliberately purging their older more expensive employees (Defendant continued this pattern after removing Mr. Birdsong, eliminating older employees from the Richmond office as well).

84. Defendant willfully, deliberately, and in conjunction with an overall scheme, discriminated against Mr. Birdsong by forcing him to resign on account of his age, in violation of the ADEA.

## COUNT I: AGE DISCRIMINATION

85. Plaintiff reasserts and affirms the statements made in paragraphs 1-85.

86. The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to discriminate against an employee on account of age. 29 U.S.C. § 623.

87. Per Title 29 of the United States Code, discrimination includes adverse employment actions such as termination on account of age.

88. Under Title 29 of the United States Code, Defendant discriminated against Plaintiff by forcing him to retire involuntarily on account of his age.[1]

---

[1] The elements necessary to establish a prima facie case for age discrimination are: "[Plaintiff] (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting his employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone

89. Plaintiff is a member of a protected class over the age of forty, specifically Plaintiff is seventy-three (73).

90. Plaintiff was at least ten years older than the next oldest similarly situated project superintendents in the Newport News Offices and was on average twenty years older than similarly situated project superintendents—he was approximately fifty years older than Defendant's recent hires into his working group.

91. The age difference between Plaintiff and the younger project superintendents provides sufficient inference of age discrimination, even if some of the other younger project superintendents were over forty years old.[2]

92. Plaintiff was performing at or above Defendant's expectations for project superintendents in Newport News.

93. Plaintiff was informed by his direct supervisor, Mr. Arthur, shortly before Defendant's discriminatory actions, that Plaintiff was doing a great job and that there were no complaints regarding his performance.

94. Plaintiff was billing as many or more billable hours as the younger project superintendents in Newport News.

95. Plaintiff had no outstanding personal issues with any of the other employees with whom he worked.

96. Plaintiff was used as a mentor by Defendant for the younger project superintendents, assistant superintendents, and interns at W.M. Jordan.

---

outside the protected class or someone "substantially younger." Sullivan v. Perdue Farms, Inc., 133 F. Supp. 3d 828, 837 (E.D. Va. 2015).

[2] "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996).

97. Plaintiff suffered an adverse employment action on account of his age.

98. Plaintiff, the oldest Project Superintendent at the Newport News Office, was forced to resign on April 30, 2020.

99. Plaintiff was forced to reitre of W.M. Jordan because of his age.

100. Younger project superintendents were treated more favorably than Plaintiff.

101. None of the younger project superintendents in the Newport News Offices were terminated, despite being similarly situated.

102. Defendant made hires of superintendents in their twenties and placed them on the same worksite out of which Plaintiff was forced.

103. Defendant discriminated against Plaintiff on account of Plaintiff's age by presenting him with an ultimatum to resign or be terminated, thus constructively discharging him.

104. Defendant's discrimination against Plaintiff was willfull and deliberate.

105. Defendant purposefully forced Plaintiff to retire on account of his age.

106. Defendant had been deliberately forcing retirements upon, or terminating, the older employees of its workforce since at least April 2020 as shown by the list of names, at least four of whom were removed in the same manner as Plaintiff.

107. Plaintiff was another older member of Defendant's workforce who was forced out as a part of the Defendant's attempt to get rid of its older workforce.

108. Plaintiff suffered loss of income and benefits because of Defendant's discrimination.

109. Defendant knowingly violated the ADEA and discriminated against Plaintiff on account of his age by forcing Plaintiff to retire.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgement against the Defendant as follows:

1. Appropriate declaratory relief declaring the acts and practices of Defendant to have been in violation of Mr. Birdsong's rights as secured by the Age Discrimination in Employment Act 29 U.S.C. §§ 621, *et seq.*,;

2. Permanently enjoin Defendant, its assigns, successor, agents, employees, and those acting in concert with them from engaging in discrimination against employees;

3. For appropriate actual damages against Defendant for violations of the Age Discrimination in Employment Act in amounts no less than:

   a. $36,000 in Back Payment of Plaintiff's wages from the time of termination to present (calculated to date of filing); and further for backpayment of Plaintiff's from time of filing onward.

   b. $15,000 in Back Payment of scheduled bonuses and raises.

   c. $15,000 in Payment for loss of benefits such as health insurance, dental insurance, visision insurance, prescription insurance, and other benefits of employment as a result of Plaintiff's wrongful termination.

   d. $46,000 in lost 401(k) through taxes, contribution loss, and withdrawal in a down market caused by Defendant's discrimination against Plaintiff.

   e. $1,195,000 in Front payment of the loss of income, including incremental raises and bonuses, suffered by Plaintiff as a result of his unlawful termination for a period of ten years to enable Plaintiff to obtain similarly compensated employment as it is unlikely Plaintiff will ever regain his previous income level.

4. For appropriate liquidated damages against Defendant for willful violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, in amounts equal to damages awarded to Plaintiff for back pay and benefits;

5. For all other wages and benefits lost or denied;

6. For an award to Plaintiff of his reasonable attorney's fees, and costs incurred in this action, together with expert witness fees and expenses;

7. For an award of any additional amounts necessary to offset the adverse tax consequences of an award received in a lump sum;

8. For an award of pre-judgement and post-judgement interest on any monetary award; and

9. For an Order of any other relief this Court deems to be just and proper.

## DEMAND FOR JURY TRIAL

10. Mr. Birdsong, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury in this action for all claims so triable.

Respectfully Submitted,

T. WAYNE BIRDSONG

_____/s/_____
Brandon T. Bybee (VSB# 92140)
William B. Barteau (VSB# 93381)
BRANDON T. BYBEE, P.L.C.
P.O. Box 9528
Norfolk, VA 23505
Tel: (757) 568-0090
Fax: (866) 568-0090
brandon@bybeelegal.com
william@bybeelegal.com
*Counsel for Plaintiff*